[No. B104867. Second Dist., Div. Two. Nov. 7, 1996.]

CRESSE S., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Real Party in Interest.

948

COUNSEL

Howard S. Bodenheimer for Petitioner.

No appearance for Respondent.

De Witt W. Clinton, County Counsel, Auxiliary Legal Services, Adrian Gragas and Tracey Resnick for Real Party in Interest.

OPINION

BOREN, P. J.—Petitioner, Cresse S., seeks a writ of mandate directing the juvenile court to set aside its order of August 21, 1996, that directed the department of children and family services (DCFS) to provide permanent placement services for her son Jason C. (the minor), and set a Welfare and Institutions Code section 366.26[1] selection and implementation hearing. Petitioner contends that the juvenile court "failed to exercise it[s] discretion

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

to order continued reunification efforts as [petitioner] was previously unable to financially afford drug testing and the concerns regarding the minor's safety in the home of [petitioner] were speculative."

## I. FACTUAL AND PROCEDURAL BACKGROUND

*The Petition.*

On April 21, 1994, DCFS filed a petition requesting the juvenile court to adjudge the minor, then 10 months of age,[2] to be within its jurisdiction and to declare him a dependent child. The petition alleged, inter alia, that the minor was born suffering symptoms of drug withdrawal and/or positive toxicology screen for cocaine; that petitioner had a history of drug use which rendered her incapable of providing regular care for the minor; that petitioner had left the minor with his maternal grandmother without making provisions for his supervision; and that petitioner had not provided the minor with the necessities of life.

*Detention Hearing.*

On April 22, 1994, the juvenile court held a detention hearing during which it considered a DCFS report dated April 20, 1994. DCFS reported that on June 25, 1993 (one day after the birth of the minor), petitioner, claiming she was unable to stop, advised that she had been using cocaine for three to four days prior to the minor's birth. She also stated she had been using marijuana, cocaine and alcohol since the age of 15. Petitioner agreed to voluntary services, and was referred for drug treatment and parenting classes. Although DCFS provided transportation funds to enable her to attend these programs, petitioner failed to complete them. DCFS also reported that on March 3, 1994, petitioner was arrested for being under the influence of drugs and that she had been ordered to attend an inpatient drug treatment program. On March 15, 1994, she dropped out of the program. Although she later enrolled in another program, she failed to comply with the attendance requirements. In addition, she was either unwilling or unable to provide a urine sample for drug testing. On April 7, 1994, she tested positive for cocaine. DCFS also advised that at the time the minor was detained, in April 1994, petitioner was transient and had had no stable residence since January 1994.

The court held that a prima facie case for detaining the minor had been established pursuant to section 300, subdivisions (b), (c), (g) and (i). Petitioner was ordered to participate in a "low cost/no cost drug/alcohol"

---

[2] The minor was born on June 24, 1993.

program. DCFS was ordered to provide family reunification services. The minor was ordered released to his maternal grandmother, and the matter was continued to January 27, 1995, for a pretrial resolution conference.

*Pretrial Resolution Conference.*

On July 8, 1994, the court held a pretrial resolution conference during which it considered a DCFS report dated June 14, 1994. It was reported that petitioner was residing in a residential drug treatment program, and that she had admitted that substantially all of the petition allegations were true, including the drug allegations. Petitioner's mother advised DCFS that petitioner has had a drug problem for years and "keeps promising to get help but never follows through."

In a subsequent report, submitted to the court on June 17, 1994, DCFS advised that petitioner had dropped out of her inpatient drug program.

Petitioner pleaded no contest to three counts of the petition. The court held by clear and convincing evidence that there was substantial danger to the physical health of the minor or of the minor suffering severe emotional damage, and that there was no reasonable means to protect the minor without removal from petitioner's physical custody. The minor was declared a dependent child under section 300, subdivisions (b) and (g). The court ordered DCFS to provide family reunification services, and directed petitioner to participate in parenting classes and drug counseling, including random testing.

*Six-month Review Hearing.*

A six-month review hearing was held on February 2, 1995. In a report dated December 27, 1994, DCFS reported that petitioner had been attending weekly counseling at a drug treatment program from June 13, 1994, until October 21, 1994, and that she had tested "clean." She stopped attending "for financial reasons." Although she and the drug treatment program director both stated they had come to an agreement on the financial concerns, petitioner had not, as of December 27, 1994, reenrolled in the program. DCFS also reported that petitioner's visitation with the minor was "uneven . . . averaging once per week."

The court directed DCFS to give petitioner low-cost/no-cost referrals for parenting and drug counseling, and a bus pass if petitioner became unemployed.

*12-month Hearing*:

On July 7, 1995, a 12-month hearing was held. The court considered a DCFS report dated June 23, 1995, wherein DCFS advised that petitioner had

done "very little toward reunification over the last period of supervision." Although she was given numerous referrals by DCFS, she did not follow through on drug counseling and testing. DCFS advised that although petitioner had started a number of jobs, after a few weeks she would become unemployed. Petitioner's visitation with the minor was described as "very spotty." DCFS noted that this was true even though petitioner was permitted to visit the minor whenever she wanted—even live in the same home with him, but "doesn't do so."

*Permanency Planning Hearing.*

On July 7, 1995, the court ordered a permanency planning hearing for October 20, 1995. The hearing was not held until May 23, 1996, primarily because a disqualification motion pursuant to Code of Civil Procedure section 170.1 was filed against the referee who had been conducting the hearings. This necessitated review of the petition by a disinterested judicial officer.

The permanency planning hearing was eventually heard (before another referee) on August 21, 1996. At that time, the court considered a report dated October 12, 1995. DCFS reported that although petitioner began drug testing in September 1995, the tests were not random. She tested negative on September 10, September 17, and October 1, 1995. She also began a parenting class during the last week of September 1995, and was allegedly trying to make up classes. She was reported as living with a boyfriend who had hit her in a domestic violence incident "last spring." They now claimed that, although they continued to have arguments, they no longer "get physical."

The court also considered a report dated August 21, 1996. DCFS noted that during the past 38 months of DCFS supervision petitioner had been provided with referrals and transportation assistance. Still, she had failed to begin and complete a DCFS-approved drug counseling program with random testing. Nor had she completed a parenting class. In addition, petitioner had failed to maintain monthly contact with the social worker, and her address and telephone had been unknown to DCFS since January 25, 1996, when petitioner disappeared. She was eventually located at Sybil Brand Institute during a routine due diligence search on June 12, 1996.

DCFS also reported that petitioner's visitation with the minor was sporadic and concluded that as a result, the minor had not grown close to petitioner. In addition, although the grandparents had, in the past, indicated that they would be willing to provide long-term foster care, they now wanted to adopt the minor.

On August 21, 1996, the court found by a preponderance of the evidence that continued jurisdiction over the minor was necessary, that return of the minor to the physical custody of petitioner would create a substantial risk of detriment to the minor's physical or emotional well-being, that reasonable efforts to reunite the minor with petitioner had been made, and that petitioner had failed to comply with the case plan. The court also found that the minor could not be returned to the physical custody of petitioner, and that there existed no substantial probability that the minor would be returned within six months. The court found that the minor could or would be adopted and ordered him referred for adoptive planning. Reunification services were terminated, and DCFS was directed to provide permanent placement services for the minor. A section 366.26 hearing was set for December 19, 1996. Petitioner then filed this petition.

## II. Contentions

Petitioner, citing *In re Daniel G.* (1994) 25 Cal.App.4th 1205 [31 Cal.Rptr.2d 75], contends that the juvenile court "failed to exercise it[s] discretion to order continued reunification efforts" because she was "previously unable to financially afford drug testing," and the "concerns regarding the minor's safety in [petitioner's] home . . . were speculative."

## III. Discussion

### A. *Adequacy of the Reunification Services*

Viewing the record in the light most favorable to the judgment below (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545 [3 Cal.Rptr.2d 217]), we conclude that the reunification services offered to petitioner were sufficient. Petitioner was ordered to participate in a program of parenting, drug counseling and testing. In order to assist petitioner, DCFS provided her with information and referrals for parenting programs, drug counseling and testing. In addition, DCFS facilitated her participation in these programs by providing transportation funds. DCFS repeatedly advised petitioner of what she needed to do in order for the minor to be returned to petitioner's custody. Despite the reminders, information and referrals, petitioner did not enroll in or complete any drug counseling or participate regularly in a program of random drug testing. Nothing contained within this record suggests that the services were inadequate. What the record reveals is that petitioner failed to regain custody of the minor because petitioner refused to comply with the court-ordered reunification plan.

### B. *Trial Court's Findings*

Petitioner suggests that the trial court erred in finding the minor was at risk if returned to petitioner's care—because the finding was based solely on

findings that during the reunification period she "moved several times," and because she is now living with a boyfriend who physically abused her on at least one occasion. Petitioner claims that because her boyfriend has attended domestic violence classes, there is no indication that she is "presently at risk of further abuse." The record here is clear. The minor was not returned to petitioner's physical custody because petitioner failed during the reunification period to address those problems which led to the minor's detention, i.e., petitioner's drug problem, and her inability to provide proper care as a result. Although petitioner's unsettled lifestyle and the evidence of domestic violence were quite properly considered by the court in making its findings, it was petitioner's failure to comply with the reunification plan which caused the court to conclude that the minor would be at risk if returned to petitioner's care. Such a finding is fully supported by the record.

## C.  *Extension of Family Reunification Services*

Petitioner, relying on *In re Daniel G.*, *supra*, 25 Cal.App.4th 1205, claims, in essence, that because—during the reunification period—she attended some drug counseling sessions and an unspecified number of Narcotics Anonymous meetings, and occasionally visited the minor, she has demonstrated an interest in the minor such that the juvenile court should have extended the reunification period.

In "rare instances" reunification services may be extended beyond the 18-month statutory time. (*In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1799 [42 Cal.Rptr.2d 200].) Where, for example, a parent has an "impeccable record of visitation," and has made every effort to comply with the reunification plan, but is hospitalized for mental illness for all but five months of the reunification phase of the dependency proceedings, the juvenile court has the discretion to continue reunification services. (*Id.* at pp. 1777-1778.) Reunification services may also be extended when "a reunification plan [is] developed but not implemented during most of the reunification stage." (*In re Daniel G.*, *supra*, 25 Cal.App.4th at p. 1213.)

No such circumstances exist here. The minor was detained in April 1994. Shortly thereafter, an order was in effect directing petitioner to participate in a parenting class and drug counseling with random testing. The 18-month review hearing was completed on August 21, 1996, more than 2 years after detention. What the record reflects is that petitioner failed, in every respect, to comply with the reunification plan. Petitioner, of course, knew exactly what was required of her in order to gain custody of her child. She was required to comply with the juvenile court orders. This she failed to do.

Petitioner makes much of the fact that at the time of the August 21, 1996, hearing she had attended some drug counseling classes. Petitioner's flurry of

activity on the eve of the 18-month review hearing did not convince the juvenile court that reunification services should be extended. Under the circumstances of this case, we agree. We find no abuse in the juvenile court's discretion in terminating reunification services. Rather, it contains substantial evidence to support the juvenile court's decision to order a hearing under section 366.26.

### D. *This Petition Could Be Dismissed as Abandoned*

■ Although we have concluded that the juvenile court properly ordered a section 322.26 hearing, we have serious doubts as to the propriety of entertaining this petition.

California Rules of Court, rule 39.1B(i) provides that petitions for extraordinary writs are to be "liberally construed in favor of their sufficiency," and that "[t]he processing of the petition for writ shall not be delayed or impeded due to technical defects or omissions." Rule 39.1B(j) provides, in pertinent part, as follows: "The petition for extraordinary writ shall summarize the factual basis for the petition. Petitioner need not repeat facts as they appear in any attached or submitted record, provided, however, that references to specific portions of the record, their significance to the grounds alleged, and disputed aspects of the record will assist the reviewing court and shall be noted. Petitioner shall attach applicable points and authorities."

■ "A 'reviewing court has inherent power, on motion or its own motion, to dismiss an appeal which it cannot or should not hear and determine.' [Citation.] An appealed-from judgment or order is presumed correct. [Citation.] Hence, the appellant must make a challenge. In so doing, he must raise claims of reversible error or other defect [citation], and 'present argument and authority on each point made' [citations]. If he does not, he may, in the court's discretion, be deemed to have abandoned his appeal. [Citation.] In that event, it may order dismissal. [Citation.]" (*In re Sade C.* (1996) 13 Cal.4th 952, 994 [55 Cal.Rptr.2d 771, 920 P.2d 716] (*Sade C.*).) ■ Such a result is appropriate here.

What California Rules of Court, rule 39.1B makes plain is that an appellate court is not permitted to deny a petition for writ of mandate on technical grounds. Rather, it is obligated to closely review the petition and record for reversible error. The rule's mandate, however, does not relieve an attorney from meeting his or her obligation, under the rule and pursuant to *Sade C.* to provide this court with an adequate record, argument, and points and authorities. Where an attorney has failed to meet his or her obligation, the petition may, and should, be dismissed. (*In re Sade C., supra*, 13 Cal.4th at p. 994.)

Here, for example, petitioner has raised vague claims of reversible error. She has, however, done so without citation to the record and without adequately presenting argument and authority on the points made. Although petitioner's counsel has not specifically requested a *"Wende"* review (*People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]), this is precisely the type of review required when counsel has failed to comply with the requirements of California Rules of Court, rule 39.1B and *Sade C.* We have no obligation to consider such *Wende* requests. (*In re Sade C., supra*, 13 Cal.4th at p. 994.) Accordingly, the petition for writ of mandate could have been dismissed as abandoned.

Petitioner's counsel is not alone in his submission of an inadequate petition. We have noticed an alarming number of similar petitions being filed which have little, if any, merit. This is perhaps caused by two problems. The first is that counsel in dependency cases are generally paid on a flat fee basis. Under this flat fee arrangement, the attorney not only performs services in connection with the dependency proceedings, but may be obligated to file a petition for writ of mandate permitted by section 39.1B. Perhaps the compensation arrangement presents too little incentive to these attorneys to perform their appellate responsibilities adequately. Second, we believe that the issue of the adequacy of reunification services is often raised by writ petition following the permanency planning hearing, whether or not the issue has any merit, because the issue may not be raised in a subsequent appeal. Thus, some attorneys may believe that they will be accused of providing inadequate representation should they fail to file such petitions. We remind counsel that where, as here, the record clearly indicates that the reunification services were adequate, counsel is not obligated to file a petition for writ of mandate. We recognize that in some cases the issue may be much closer than it was in this case. We remind counsel that when the case has any merit, the attorney is required—regardless of the compensation arrangement—to prepare a petition sufficient under the California Rules of Court and *Sade C.* Should a petition insufficient under the Rules of Court and case law be submitted, we are persuaded that our proper course of action is to dismiss the matter as abandoned, unless good cause is shown and a conforming petition supplants the defective one.

## IV.  CONCLUSION

Section 361.5 provides for an 18-month statutory time limitation on reunification services. When a child cannot be returned within the 18-month statutory time frame, the court is required to establish a permanent plan for the child and refer the case for a selection and implementation hearing under section 366.26. As the Supreme Court has recently stated, "Children, too,

have fundamental rights—including the fundamental right to be protected from neglect and to 'have a placement that is stable [and] permanent.' [Citations.] Children are not simply chattels belonging to the parent, but have fundamental interests of their own that may diverge from the interests of the parent. [Citation.]" (*In re Jasmon O.* (1994) 8 Cal.4th 398, 419 [33 Cal.Rptr.2d 85, 878 P.2d 1297].) Under the facts of this case, no additional services would have enabled petitioner to regain custody of the minor within 18 months of the date he was detained.

## V.  DISPOSITION

Because the record here contains substantial evidence to support the juvenile court's decision to order a hearing under section 366.26, the petition for writ of mandate is denied, and the order to show cause is dismissed.

Fukuto, J., and Nott, J., concurred.