134 Cal.Rptr.2d 187 (2003)
108 Cal.App.4th 845
In re N.M., a Person Coming Under the Juvenile Court Law.
Riverside County Department of Public Social Services, Plaintiff and Respondent,
v.
R.M. et al., Defendants and Respondents;
N.M., Appellant.
No. E032518.
Court of Appeal, Fourth District, Division Two.
May 16, 2003.
*188 Sharon S. Rollo, under appointment by the Court of Appeal, Chatsworth, for Appellant.
William C. Katzenstein, County Counsel, and Julie A. Koons, Deputy County Counsel, for Defendant and Respondent Riverside County Department of Public Social Services.
Jennifer Mack, under appointment by the Court of Appeal, for Defendant and Respondent R.M.
Lori A. Fields, under appointment by the Court of Appeal, Los Angeles, for Defendant and Respondent J.M.

OPINION
RICHLI, J.
N.M. (Minor) appeals from an order of the juvenile court continuing reunification services to his parents (collectively, Parents). We conclude the order, which effectively extended services beyond the statutory 18-month maximum, was not supported by the evidence, and we reverse.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. Original Dependency Petition January 2001

The Riverside County Department of Public Social Services (DPSS) filed a dependency petition pursuant to Welfare and Institutions Code section 300 [1] in January 2001, when Minor was 18 months old. The petition alleged both parents abused controlled substances. A search of Parents' residence had revealed crack cocaine and narcotics paraphernalia. Both parents admitted *189 using cocaine the day of the search, and both were arrested.
The court ordered Minor detained and granted visitation to Parents. It also ordered DPSS to provide reunification services. Minor was placed with his grandparents.

B. Jurisdictional Hearing: Custody to Mother, Reunification Services to FatherJanuary 2001

At the jurisdictional hearing on January 30, 2001, the court found dependency jurisdiction over Minor and placed him with J.M (Mother) under a family maintenance plan, on condition Mother stay in compliance with her drug program. Minor was to reside with Mother in her drug treatment facility. The court granted R.M. (Father) reunification services and visitation.

C. Custody to Father on Section 388 PetitionJuly 2001

In June 2001, Father filed a modification petition pursuant to section 388 seeking to have Minor placed with him as well as with Mother. Father alleged he had completed a residential drug program, a parenting program, and an anger management program; was regularly testing negative for drugs; maintained an ongoing relationship with Mother; and regularly visited Minor.
On July 2, 2001, the court granted Father's petition and allowed him to move in with Mother and Minor. The court returned custody of Minor to Father as well as Mother, under a family maintenance plan. The court continued this arrangement at a semi-annual review hearing held July 30, 2001.

D. Removal of Minor from Parents on DPSS's section 387 petitionFebruary 2002

In January 2002, DPSS recommended Minor's dependency be terminated and he remain in the custody of Parents. DPSS reported Parents appeared to have resolved their substance abuse problems in an appropriate manner. They appeared to be managing their home and getting along well and had consistently demonstrated their ability to provide Minor with an appropriate, safe, and nurturing home. The social worker's report containing the recommendation that the dependency be terminated was served on counsel for Parents on January 16, 2002. Parents appeared in court on January 29, 2002, at which time the court continued the hearing to February 5, 2002.
On February 5, 2002, however, before the court took any action on the recommendation to terminate the dependency, DPSS filed a supplemental petition pursuant to section 387, seeking to continue the dependency pending further investigation of Parents' substance abuse. DPSS alleged Parents had resumed using controlled substances shortly after their last court appearance on January 29, 2002. Mother had been arrested on February 1, 2002, for being under the influence, at a property at which cocaine was allegedly being sold. Several other adults at the property were determined to be under the influence of narcotics. According to the police report, items found at the property included marijuana, an off-white substance, three firearms and ammunition, a pay-owe sheet, and substantial amounts of cash. There were about seven small children at the property as well, whom the officers took into protective custody.
DPSS also learned Parents had left Minor with his grandparents on January 31, 2002, and had not returned to pick him up. Father had not contacted the grandparents regarding Minor as of February 4, 2002. Mother was in jail, and Father's whereabouts were unknown.
*190 Mother told DPSS she and Father had used cocaine on January 31, 2002, and Father had disappeared. Father, however, told DPSS he and Mother had an argument, and she drove away and left him stranded. Father repeatedly denied using cocaine on January 31, 2002, and stated a drug test would be "clean."
The social worker then spoke again to Mother, who stated she had lied about Father using cocaine on January 31, 2002. However, Father tested positive for cocaine on February 19, 2002.
On February 26, 2002, the court found the allegations of the supplemental petition true and granted custody to DPSS. It granted reunification services to Mother and Father and ordered them to participate in counseling and/or educational programs.

E. Continuation of Reunification servicesOctober 2002

In August 2002, DPSS recommended the court return Minor to Parents and provide Parents with six months of family maintenance services. DPSS noted both Parents had completed substance abuse and parenting programs; both were working full time; both had fully complied with random drug testing, and all results had been negative; both had had regular weekly contact with Minor and were appropriate during visits; and both had made significant progress with their case plans. The prognosis for returning Minor to the home appeared good.
A month later, however, DPSS changed its recommendation, seeking to have the court terminate services to Parents and set a section 366.26 hearing within 120 days. DPSS stated Parents had not attended their substance abuse classes and had been terminated from their programs. They had not submitted to random drug testing as requested by the social worker. They had not obtained a legitimate means of support and did not have a plan of support for Minor if he were returned to them. At a recent visit, Parents' home was found to be filthy, very hot, and apparently without electricity. Both Parents were unemployed and did not have the means to provide for Minor.
Documentation submitted by DPSS showed Parents had failed to show up for drug tests on September 3 and 17, 2002. A report from the Riverside County Department of Mental Health dated September 10, 2002, stated Mother had made "[l]ittle progress toward positive change" in her substance abuse program, and her case had been closed "due to lack of attendance and failure to contact program." The department's report on Father of the same date stated he had made "[n]o progress toward positive change" and had "failed to return to treatment or contact facility."
DPSS further reported that Parents had attended an intake session for a substance abuse program on September 12, 2002, but had not returned for treatment until September 26, 2002. Mother had failed to show up for a perinatal appointment on September 18, 2002. Parents had been given referrals for individual counseling on August 2, 2002, but as of September 27, 2002, neither parent had attended counseling or called to schedule an appointment.
On October 2, 2002, the court conducted a hearing, which it characterized as a six-month review of the case initiated by DPSS's February 2002 section 387 petition. The court received in evidence letters showing Parents' reenrollment in substance abuse programs on September 12, 2002. It also heard testimony from Mother, who explained her reasons for being discharged from her drug program and for missing drug tests. Mother said she was *191 discharged because she missed three sessions due to food poisoning and a trip to Oregon due to her grandfather's illness. She missed one drug test because she had lost her identification and another because she forgot about the test and went to Reno.
The court found that return of Minor to Parents would create a substantial risk of detriment and that continued placement outside the home was necessary. In evaluating Parents' performance under the reunification plan, the court stated it would not count against Father's reunification period the time Mother's family maintenance plan was in effect. Therefore, it considered both Parents to be at the six-month review stage in their reunification plans.
The court stated it appeared from the DPSS status report that Parents had regularly participated in reunification services. Both had completed a parenting program. A May 2002 assessment stated Mother had regularly participated in an outpatient drug program. A June 2002 letter showed Father's compliance with his drug program. An August 2002 report stated Father was making good progress in treatment and had negative drug tests.
The court stated it was "not impressed" with Mother being discharged from her drug program for nonattendance, or with either parent's failure to appear for drug tests in September 2002. However, it stated the only question was whether reunification services should continue. The court determined they should. It found Parents had made moderate progress but had not completed their plans. It also found a substantial probability Minor would be returned to a parent if Parents completed reunification services by the next hearing in six months.
Minor appealed from the order continuing the reunification services.

II

DISCUSSION

A. Standard of Review

A juvenile court's dispositional orders, including those respecting reunification services, are subject to that court's broad discretion. To reverse such an order, a reviewing court must find a clear abuse of discretion. {In re Christopher H. (1996) 50 Cal.App.4th 1001, 1006, 57 Cal.Rptr.2d 861.)

B. Continuation of Reunification Services

1. Statutory limitations

The grant of child welfare services, including reunification services, is governed by section 361.5. Subdivision (a) of that section provides that where, as here, a child was under the age of three years when initially removed from parental custody, services shall not exceed six months from the date the child entered foster care. A child is deemed to have entered foster care either on the date of the jurisdictional hearing or 60 days after the child was initially removed from parental custody, whichever is earlier. (§ 361.5, subd. (a)(3).)
Notwithstanding the presumptive six-month limitation, services may be extended up to a maximum of 18 months from the date the child was originally removed from parental custody. The court can only extend the time if it finds a substantial probability the child will be returned to parental custody within the extended period. (§ 361.5, subd. (a)(3).)
However, despite the "maximum" 18-month limitation set forth in section 361.5, subdivision (a), courts have held that a juvenile court may, in rare instances, continue reunification services beyond 18 *192 months. The court must determine that the best interests of the child warrant the continuation, despite the recognized need for a prompt resolution of his or her custody status. (See Cresse S. v. Superior Court (1996) 50 Cal.App.4th 947, 954, 58 Cal.Rptr.2d 56; In re Elizabeth R. (1995) 35 Cal.App.4th 1774, 1798-1799, 42 Cal. Rptr.2d 200.)

2. Continuation of services in this case

The court in this case treated the October 2, 2002, hearing, at which it entered the order continuing reunification services from which Minor appeals, as a six-month review hearing pursuant to section 366.21, subdivision (e). The court's apparent reasoning was that the pendency of the case should be calculated from the date DPSS's section 387 petition was granted and Minor was removed from Parents' custody. We conclude the court erred in viewing the case in that manner.
"When a juvenile court sustains a supplemental petition pursuant to section 387, the case does not return to `"square one"` with regard to reunification efforts. [Citations.] Instead, the question becomes whether reunification efforts should resume. The answer is yes if: the parent has received less than 12 months of child welfare services (§§ 361.5, subd. (a), 366.21, subd. (e)); the parent did not receive reasonable child welfare services (§§ 366.21, subd. (g)(1), 366.22, subd. (a)); or the case has passed the 12-month mark but there is a substantial probability the child will be returned within 18 months of the date the child was originally removed from the parent's physical custody (§ 366.21, subd. (g)(1))." (Carolyn R. v. Superior Court (1995) 41 Cal.App.4th 159, 166, 48 Cal.Rptr.2d 669, fns. omitted.)
None of those conditions existed in this case in October 2002. There was and is no claim that the services provided to Parents were not reasonable. And both the 12and 18-month periods had elapsed by October 2002.
As our factual and procedural recitation shows, the court first ordered reunification services in January 2001, when it originally detained Minor. At the jurisdictional hearing the same month, the court ordered a family maintenance plan for Mother and reunification services for Father. When it gave custody back to Father in July 2001, the court ordered both Parents to participate in the family maintenance plan. Finally, when it removed Minor from Parents in February 2002 based on DPSS's section 387 petition, the court ordered reunification services for both Parents.
Thus, by October 2002, Parents had received about 20 months of family maintenance and reunification services. The 18-month limitation set forth in section 361.5, subdivision (a) applies to all "court-ordered services." (§ 361.5, subd. (a).) Nothing in the statute suggests the limitation period should be calculated separately for maintenance and reunification services. Accordingly, the court in Carolyn R. held that, when a parent is granted maintenance services but subsequently loses custody on a section 387 petition and is then granted reunification services, both the maintenance and the reunification services are counted in determining whether further services can be granted. (Carolyn R. v. Superior Court, supra, 41 Cal.App.4th 159, 165, 48 Cal.Rptr.2d 669.)
The fact a parent had custody during part of the total period does not stop the limitation period in section 361.5 from continuing to run. Section 361.5 states: "Physical custody of the child by the parents or guardians during the applicable time period ... shall not serve to interrupt the running of the period." (§ 361.5, subd. *193 (a).) "To construe the section's language as requiring the court to start services anew simply because a parent succeeded in temporarily regaining physical custody `would scuttle the purpose of the statute merely to preserve its form.' [Citation.]" (Carolyn R. v. Superior Court, supra, 41 Cal.App.4th 159, 165, 48 Cal.Rptr.2d 669.)
There is, however, a question regarding when the maximum 18-month period begins to run when both maintenance and reunification services have been provided. As noted ante, section 361.5, subdivision (a) states that the period runs from "the date the child was originally removed from physical custody of his or her parent or guardian...." A parent who initially received only maintenance servicesi.e., one whose child was not removed on the section 300 petition initiating the dependency proceeding, but was subsequently removed for the first time on a section 387 petitionmight be able to argue that the period prior to the granting of the section 387 petition should not be counted. The court in Carolyn R. acknowledged that possible argument but declined to decide the question since it was not presented in that casethe mother had lost and regained custody before the section 387 petition was filed. (Carolyn R. v. Superior Court, supra, 41 Cal.App.4th 159, 165, fn. 8, 48 Cal.Rptr.2d 669.)
Even assuming that family maintenance services should not be counted against the 18-month period where the child is not removed from the parent's custody until after the services are provided, the principle would not apply in this case. Minor was originally removed from Father's custody in January 2001; Father did not regain custody until his section 388 petition was granted in July 2001. And although Mother was granted custody at the January 2001 jurisdictional hearing, Minor was originally removed from her custody when the court ordered him detained earlier that month.
Case law demonstrates that a detention pending a jurisdictional hearing should be considered an original removal from custody for purposes of section 361.5, subdivision (a). In In re Christina A. (2001) 91 Cal.App.4th 1153, 111 Cal.Rptr.2d 310, the court considered the proper interpretation of the phrase "the date on which the child was initially removed from the physical custody of his or her parent or guardian" as used in section 361.5, subdivision (a) to mark the commencement of the six-month limitation on reunification services for a child under three years old. The court held the phrase should be construed to mean "the date on which the child was initially removed from the home of a parent or guardian by a peace officer pursuant to section 305 or by a social worker pursuant to section 306." (In re Christina A. at p. 1165, fn. 2, 111 Cal.Rptr.2d 310.)
Sections 305 and 306 authorize the temporary detention of a minor pending a jurisdictional determination. (§§ 305, subd. (a), 306, subd. (a)(1).) The Christina A. court concluded its interpretation of the phrase "initially removed from ... physical custody" in section 361.5, subdivision (a) to include a detention pursuant to section 305 or section 306 was appropriate in view of the Legislature's intent to conform California's dependency laws to changes in federal law. (In re Christina A, supra, 91 Cal.App.4th at p. 1165, fn. 2, 111 Cal. Rptr.2d 310.) The federal law changes were intended "to, among other things, minimize delay in juvenile dependency proceedings, reduce the length of time that dependent children stay in a temporary placement, and increase the number of adoptions." (Id. at p. 1160, 111 Cal. Rptr.2d 310.)
Christina A.'s reasoning and conclusion apply equally here. The language of section *194 361.5, subdivision (a) at issue in Christina A."the date on which the child was initially removed from the physical custody of his or her parent or guardian"is virtually identical to the language of section 361.5, subdivision (a), which delineates the starting point for the 18-month limitation period"the date the child was originally removed from physical custody of his or her parent or guardian." Both phrases should be interpreted the same way, to include initial removal pursuant to section 305 or 306.
Indeed, if it were otherwise, a parent whose child was initially detained but who regained custody at the jurisdiction hearing could receive up to 12 months of family maintenance services (§ 16506), lose custody again on a section 387 petition, and then receive up to 18 additional months of reunification services under section 361.5, subdivision (a) by arguing that the "original" removal did not occur until the loss of custody pursuant to the section 387 petition. The resulting total hiatus of 30 months manifestly would not advance the legislative purpose of minimizing delay in dependency proceedings. "While [22 months] may not seem a long period of time to an adult, it can be a lifetime to a young child." (In re Marilyn H. (1993) 5 Cal.4th 295, 310, 19 Cal.Rptr.2d 544, 851 P.2d 826.)
We therefore conclude Mother's 18-month period commenced at the time of the original detention and not later when she lost custody on the section 387 petition. That being the case, the court could only order further reunification services in October 2002 if it found exceptional circumstances. (Cresse S. v. Superior Court, supra, 50 Cal.App.4th 947, 954, 58 Cal. Rptr.2d 56; In re Elizabeth R., supra, 35 Cal.App.4th 1774, 1798-1799, 42 Cal. Rptr.2d 200.)
There were no such exceptional circumstances here. Circumstances that have been held to justify extension of services beyond 18 months include a parent's hospitalization for all but five months of the reunification period or the fact a reunification plan has not been implemented during most of the reunification stage. (See Cresse S. v. Superior Court, supra, 50 Cal.App.4th 947, 954, 58 Cal.Rptr.2d 56, citing In re Elizabeth R., supra, 35 Cal. App.4th 1774, 1777-1778, 42 Cal.Rptr.2d 200, and In re Daniel G. (1994) 25 Cal. App.4th 1205, 1213, 31 Cal.Rptr.2d 75.) Here, Parents suffered from no comparable obstacle preventing them from reunifying within the 18-month period. Services were fully available to them, and they were fully capable of participating in the services, throughout the period.
The court did find a substantial probability Minor would be returned to parents within six months. But even assuming that finding might be enough to justify continuing services beyond 18 months, the finding was not supported by substantial evidence. Parents showed through their behavior since the inception of the proceeding that they could not be relied upon to abstain from drug abusethe circumstance that led to Minor's dependency in the first placeover the long term.
Mother's relapse into cocaine use in February 2002 was far from a casual incident that might have been explained as a temporary lapse in judgment. She was arrested at a drug house in Mead Valley, a considerable distance from her residence in San Jacinto. There were several other adult drug users at the property, as well as numerous small children least three firearms, at least one of which was loaded. Aside from her relapse into drug use, Mother showed severe bad judgment and a lack of concern for child safety by entering and occupying such a place.
*195 Mother also lied to DPSS. She initially told DPSS Father had used cocaine on January 31, 2002. Later, she said she had lied. At least one of the statements was not true.
Father also both relapsed into drug use and lied to DPSS. He repeatedly denied using cocaine and claimed he would test clean. Instead, he tested positive.
In addition, both Parents abandoned Minor at his grandparents' house at the time of their relapse. And their relapse occurred under extremely suspicious circumstances, shortly after their counsel received notice that DPSS was recommending the dependency be terminated. Mother, in fact, told a social worker who accompanied the arresting officers that her dependency case was "supposed to close" in a few days. The circumstances of Parents' relapse strongly suggest deliberate and conscious behavior of individuals who thought the coast was clear to start using drugs again because the dependency was over, not a momentary lapse by persons who had truly reformed.
Father argues Minor cannot rely on the February 2002 events as a basis for reversing the October 2002 order continuing reunification services, because Minor did not argue those facts at the October 2002 hearing. However, the court had an obligation to consider all relevant facts in deciding whether services should be continued, whether or not Minor argued them. The February 2000 events were highly relevant in demonstrating the improbability of Parents successfully dealing with their drug problems in the foreseeable future.
Moreover, Parents' misconduct did not end in February 2002. By the time of the October 2002 hearing, they had both been terminated from their drug abuse programs and had failed to show up for at least two drug tests. According to the Department of Mental Health reports, Mother had made little progress in her program and Father had made none. Although Parents argue there was no evidence they actually resumed using drugs at that time, Minor correctly notes Parents had been informed that "[s]hould the parent fail to test the test will be considered positive for controlled substances." Thus, Parents' behavior showed, at the least, a blatant disregard for their obligations under the case plan to prove their abstinence from illegal drugs.
Under these circumstances, there was no substantial evidence on which it reasonably could be concluded Minor probably would be returned to Parents in six months. Parents' problems were deep-seated and recurrent, as evidenced by their repeated relapses into noncompliance with their case plans notwithstanding periods of compliance as well. The court would have been derelict in its obligation to protect Minor if it had returned him to Parents without substantially more proof that they truly had reformed and could maintain an appropriate lifestyle over the long term.
The California Supreme Court has noted that the Legislature in enacting the dependency statutes "recognized that, in order to prevent children from spending their lives in the uncertainty of foster care, there must be a limitation on the length of time a child has to wait for a parent to become adequate. [Citations.]" (In re Marilyn H., supra, 5 Cal.4th 295, 308, 19 Cal.Rptr.2d 544, 851 P.2d 826.) Parents in this case were afforded more than sufficient time to "become adequate" if they sincerely intended to do so. Their repeated failure to do so showed that, however genuine their desire to reunify may have been, they had other priorities which simply took precedence when push came to shove. It was an abuse of discretion *196 for the court to order yet another reunification period under these circumstances.

III

DISPOSITION
The order appealed from is reversed.
We concur: RAMIREZ, P.J., and KING, J.
NOTES
[1] Further section references are to the Welfare and Institutions Code.