[No. G040540. Fourth Dist., Div. Three. Dec. 22, 2008.]

In re A.C. et al., Persons Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
O.H. et al., Defendants and Respondents;
A.C. et al., Appellants.

**COUNSEL**

Valerie N. Lankford, under appointment by the Court of Appeal, for Appellants.

Benjamin P. de Mayo, County Counsel, Karen L. Christensen and Jeannie Su, Deputy County Counsel, for Plaintiff and Respondent.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Respondent O.H.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Respondent J.C.

## OPINION

**IKOLA, J.**—In this juvenile dependency proceeding, brothers A.C. and J.C. (dependents) appeal a June 2008 postdisposition order continuing reunification services for their parents. Dependents were detained from their mother's home in April 2006. Shortly thereafter, dependents were placed with their father at his residence. In September 2007, dependents were detained for a second time pursuant to a Welfare and Institutions Code section 387 supplemental petition.[1] Parents received reunification services following this second detention. At a review hearing held in June 2008, dependents contended their parents had already received more than two years of child welfare services, which exceeds the 18 months of services statutorily authorized by section 361.5. It was therefore inappropriate, according to dependents, for the court to conduct a "six-month" review in June 2008 pursuant to section 366.21, subdivision (e), and to continue reunification services at that time. Dependents argue in the alternative there is insufficient evidence to support the court's finding of a "substantial probability that [dependents] may be returned" to parents within the six months following the June 2008 hearing. (§ 366.21, subd. (e).)

We affirm. The trial court properly interpreted the relevant dependency statutes in finding parents were entitled to additional reunification services at the June 2008 hearing. Section 361.5 time limits for reunification services start to run when a child is removed from all parental custody at the disposition hearing. The clock does not start running when the child is placed with a noncustodial parent pursuant to section 361.2. There is also sufficient evidence supporting the court's finding of a substantial probability dependents may be returned to the care of their parents by the 12-month review.

## FACTS

As a result of allegations of abuse by mother's boyfriend and a failure to protect by mother, Orange County Social Services Agency (SSA) first

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

took A.C. (age six at the time) and J.C. (age two at the time) into protective custody in April 2006. The court held a detention hearing on April 14, 2006, at which time the court continued the detention of dependents, authorized SSA to release dependents (to a parent, relative, or suitable adult), and ordered reunification services to commence "as soon as possible." Mother appeared at the April 14 hearing; father had not yet been located. By May 15, father had been located, SSA had referred mother and father to various programs, and mother had commenced a child abuse treatment program.

On May 23, 2006, SSA released dependents into their father's custody. On May 31, 2006, the court conducted a jurisdictional and dispositional hearing at which it declared A.C. and J.C. "dependent children . . . under section 360, [subdivision] (d) . . . ." At this hearing, the court agreed to a stipulated case plan in which father received "family maintenance" services and mother received an "enhancement plan." At least some of the services actually participated in by mother, however, were ordered by the criminal court and not by the dependency court. Following the disposition, the court provided notice of and conducted two separate six-month reviews, which SSA designated as section 364 hearings.

In September 2007, SSA detained dependents and filed a section 387 supplemental petition alleging father had engaged in drug-related misconduct. In October 2007, SSA placed dependents with their grandmother. On November 13, 2007, the court conducted a jurisdictional and dispositional hearing on the amended petition, and approved a proposed order signed by all parties, including dependents, which provided reunification services for the family and set the matter for a six-month review the following spring.

At the June 2008 six-month review, conducted pursuant to section 366.21, subdivision (e), the court continued reunification services for dependents' parents, and set a section 366.21, subdivision (f), 12-month permanency hearing for October 2008.[2] Counsel for dependents objected, claiming the matter should be set for a section 366.26 hearing because parents had already received services beyond those authorized by section 361.5, subdivision (a). The court rejected this argument, explaining "enhancement" and "maintenance" services previously received by dependents' parents did not constitute "reunification" services. In essence, the court found section 361.5 did not apply during the period of the dependency in which dependents were placed with their father and their mother did not receive reunification services. The court also found a substantial probability dependents may be returned to their parents by the 12-month permanency review, and therefore continued the case to the 12-month review and declined to set a section 366.26 hearing.

---

[2] The record is silent as to whether this hearing has occurred and whether any of the issues raised herein have been mooted.

## DISCUSSION

Dependents argue the court abused its discretion by allowing reunification services to continue in this matter. Relying primarily on *In re N.M.* (2003) 108 Cal.App.4th 845 [134 Cal.Rptr.2d 187] (*N.M.*), dependents contend parents had already received child welfare services in excess of those allowed by section 361.5, subdivision (a), by the June 2008 hearing.[3] We begin our analysis of the issue with a review of the statutes applicable to this action.

*Placement of Dependent Child with Previously Noncustodial Parent*

At the May 2006 jurisdictional and dispositional hearing, dependents were ordered removed from the physical custody of their mother. When the court removes a dependent child from the physical custody of his or her parent pursuant to section 361, subdivision (c), it must "first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child." (§ 361.2, subd. (a).) Here, the court followed this statutory mandate and awarded custody of dependents to father.

*Services for Parents with Custody of Dependent Children*

If, as in this case, a child is placed with a previously noncustodial parent at the dispositional hearing, the court may, among other things, "[o]rder that the parent assume custody subject to the supervision of the juvenile court. In that case the court may order that reunification services be provided to the parent or guardian from whom the child is being removed, or the court may order that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision, or that services be provided to both parents, in which case the court shall determine, at review hearings held pursuant to Section 366, which parent, if either, shall have custody of the child." (§ 361.2, subd. (b)(3).)

 The court here did not provide reunification services for mother following the placement with father in May 2006, but did impose supervision of father's custody, provide "family maintenance" services[4] to father, and

---

[3] We reject the notion, raised by SSA, that dependents waived or forfeited this argument. Although dependents stipulated to reunification services for their parents at the November 2007 dispositional hearing, they did not waive or forfeit their right to contest continued services at the June 2008 hearing.

[4] "Family maintenance services" are "activities designed to provide in-home protective services to prevent or remedy neglect, abuse, or exploitation, for the purposes of preventing separation of children from their families." (§ 16501, subd. (g).)

provide "enhancement" services[5] to mother. "There is no statutory [time] limit on the provision of family maintenance services if the court believes the objectives of the service plan are being met." (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 312 [55 Cal.Rptr.3d 647]; see § 16506.)

■ "If the child has not been removed from the physical custody of his or her parent, the court must schedule a review hearing pursuant to section 364 to be held within six months of the date of the declaration of dependency and every six months thereafter." (*Bridget A. v. Superior Court, supra*, 148 Cal.App.4th at pp. 303–304; see § 364; Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2007) § 2.150[1], p. 2-351.) The court held two review hearings between May 2006 and November 2007, which were designated by SSA as section 364 review hearings.

*Entitlement to Services Under Section 361.5*

Section 361.5, subdivision (a), currently[6] provides in relevant part: "whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians." "Child welfare services" are presumptively provided for 12 months from the date the child "entered foster care" with regard to children over the age of three on the "date of initial removal from the physical custody of his or her parent . . . ." (§ 361.5, subd. (a)(1).) The presumptive rule for children under the age of three on the "date of initial removal" is that "court-ordered services shall not exceed a period of six months from the date the child entered foster care." (§ 361.5, subd. (a)(2); see *In re Christina A.* (2001) 91 Cal.App.4th 1153, 1160–1161 [111 Cal.Rptr.2d 310].) The court may combine a "sibling group" that includes at least one child less than three years old at the time of his or her initial removal. In such cases, the court applies the shortened six-month "child welfare services" presumption to all members of the "sibling group." (§ 361.5, subd. (a)(3).) Notwithstanding the section 361.5, subdivision (a), presumptive allowable periods of services, "court-ordered services may be extended up to a maximum time period not to exceed 18

---

[5] SSA represents in its brief that "enhancement" services are simply child welfare services "offered to the parent not retaining custody." Such "enhancement" services are "not designed to reunify the child with that parent, but instead to enhance the child's relationship with that parent by requiring that parent to address the issues that brought the child before the court."

[6] Section 361.5 has been amended by the Legislature, with changes taking effect January 1, 2009. Some of these changes are discussed below, but this case must be decided based on the current statute, which was applied at the June 2008 hearing.

months after the date the child was originally removed from physical custody of his or her parent or guardian." (§ 361.5, subd. (a)(3); see § 366.21, subds. (e), (f), (g).)[7]

Section 361.5, subdivision (a), refers throughout its nine dense paragraphs almost exclusively to broadly described services, mentioning "child welfare services," "court-ordered services," and "court-ordered treatment programs." However, the last paragraph of section 361.5, subdivision (a), states: "Except in cases where, pursuant to subdivision (b), the court does not order *reunification services*, the court shall inform the parent or parents of Section 366.26 and shall specify that the parent's or parents' parental rights may be terminated." (Italics added.) "[R]eunification services" are "activities designed to provide time-limited foster care services to prevent or remedy neglect, abuse, or exploitation, when the child cannot safely remain at home, and *needs temporary foster care*, while services are provided to reunite the family." (§ 16501, subd. (h), italics added.)[8]

The remainder of section 361.5 speaks exclusively in terms of "reunification services." (§ 361.5, subd. (b) ["[r]eunification services need not be provided to a parent" in specified circumstances]; *id.*, subd. (c) [describing process and evidentiary standards to be utilized for determining whether to award or deny reunification services at dispositional hearing]; *id.*, subd. (d) [providing reunification services for parent whose whereabouts were unknown at disposition but who subsequently appears to assert rights]; *id.*, subd. (e) [reunification services for incarcerated or institutionalized parents]; *id.*, subd. (f) [explaining court should consider setting a § 366.26, hearing if parent is denied reunification services pursuant to selected paragraphs of subd. (b) unless "the other parent is being provided reunification services pursuant to subdivision (a)"]; 361.5, subd. (g) [procedure after setting a § 366.26

---

[7] Despite the section 361.5 "maximum time period" of 18 months, extraordinary circumstances may on occasion justify an extension of services past 18 months. (See *Cresse S. v. Superior Court* (1996) 50 Cal.App.4th 947, 954 [58 Cal.Rptr.2d 56].)

[8] The recently amended version (eff. Jan. 1, 2009) of section 361.5, subdivision (a), indicates that its time limitations apply only to "reunification services" provided to parents without custody of a child (and not any "child welfare services" provided in any context of a dependency action): "Family reunification services, when provided, shall be provided as follows: [¶] (A) [For a child three or older on the date of initial removal,] court-ordered services shall be provided during the period of time beginning with the dispositional hearing and ending with the date of the hearing set pursuant to subdivision (f) of Section 366.21, unless the child is returned to the home of the parent or guardian. [¶] (B) [For a child under three on the date of initial removal,] court-ordered services shall be provided during the period of time beginning with the dispositional hearing and ending with the date of the hearing set pursuant to subdivision (e) of Section 366.21, unless the child is returned to the home of the parent or guardian. [¶] (C) [For sibling groups,] court-ordered services to some or all of the sibling group may be limited to a period of six months from the date the child entered foster care." (Stats. 2008, ch. 457, § 1.5.)

hearing; does not discuss any services]; 361.5, subd. (h) [standards for whether reunification services will benefit the child pursuant to pars. (6) & (7) of subd. (b)]; 361.5, subd. (i) [requiring court to read into the record subd. (b)(6) factual findings related to reunification services].)

*Interaction of Sections 361.2 and 361.5*

■ *In re Erika W.* (1994) 28 Cal.App.4th 470 [33 Cal.Rptr.2d 548] (*Erika*), in holding a previously custodial parent was not entitled to reunification services under section 361.5 in a dependency case in which the minors were placed with their previously noncustodial father pursuant to section 361.2, described the interaction between sections 361.2 and 361.5: "Section 361.2 and section 361.5 were simultaneously enacted in 1986. (Stats. 1986, ch. 1122, §§ 12, 13, pp. 3982–3986.) Section 361.5 contains general rules governing the provision of reunification services to parents of minors removed from parental custody. Reunification services are mandated under section 361.5, subdivision (a) except where a parent is unavailable, mentally disabled or has been extremely abusive towards a child. Like section 361.5, section 361.2, subdivision (a)(2) also pertains to the provision of reunification services. In contrast to the general applicability of section 361.5, section 361.2, subdivision (a)(2) applies *only* when the minor is removed from the custody of one parent, pursuant to section 361, and placed in the custody of the noncustodial parent under the supervision of the juvenile court." (*Erika*, at p. 475.)

"Under these limited circumstances, section 361.2, subdivision (a)(2) invests the juvenile court with discretion as to the provision of reunification services to the parents. . . . [¶] Because section 361.5 was part of the same legislative act as section 361.2, subdivision (a)(2), it cannot be interpreted as rendering nugatory the provisions of section 361.2, subdivision (a)(2). Seen as parts of a single legislative scheme, the only rational intent which can be ascribed to the Legislature is the intent to enforce a different set of rules regarding the provision of reunification services in those cases where custody of a minor is shifted from one parent to another parent." (*Erika, supra*, 28 Cal.App.4th at p. 475.) Although these statutes have been revised since 1994, *Erika* still persuasively describes the intended purpose and interaction of the two statutes as they exist now.

*Applicability of Section 361.5 Time Limits When Child Placed with Parent*

It is uncontested that the parents have used up at least some of their entitlement to a potential 18 months of section 361.5 child welfare services; the disputed issue is when the 18 months began. Dependents claim "the clock on [the] 18-month limitation period for services began to run in April 2006,

when the minors were detained and taken into protective custody." The parents claim the time limitations set in section 361.5 began only following SSA's section 387 amended petition and dependents' removal from their father's custody, and any services received before November 2007 were not section 361.5 "reunification services."

■ " '[T]he words the Legislature chooses are the best expression of its intent and we are bound by their plain meaning.' " (*In re Silvia R.* (2008) 159 Cal.App.4th 337, 349 [71 Cal.Rptr.3d 496].) However, a review of the statutory test does not provide a clear answer to the question presented in this case. Section 361.5 does not explicitly disclaim or affirm its applicability when the court has awarded services pursuant to section 361.2. It purports to apply "whenever a child is removed from a parent's or guardian's custody" and its time limits begin *after* a child enters "foster care." (§ 361.5, subd. (a)(1), (2) ["court-ordered services shall not exceed a period of [12 or six] months from the date the child entered foster care . . ."].)[9] Do section 361.5 time limits apply even if a child is placed in the custody of a parent at the dispositional hearing?

*Erika, supra*, 28 Cal.App.4th 470, suggests two separate statutory tracks exist: one applies when a child is placed with a noncustodial parent (§ 361.2), another applies when a child is placed with someone other than a parent (§ 361.5). (*Erika*, at p. 475.) But *Erika* did not directly address whether the time limits set forth in section 361.5 run while services are provided pursuant to section 361.2, in the event dependents are later removed from parental custody pursuant to an amended petition (as occurred in this case). As the parties correctly explain in their briefs, three cases bear on this particular question: *Carolyn R. v. Superior Court* (1995) 41 Cal.App.4th 159 [48 Cal.Rptr.2d 669] (*Carolyn*); *In re Joel T.* (1999) 70 Cal.App.4th 263 [82 Cal.Rptr.2d 538] (*Joel*); and *N.M., supra*, 108 Cal.App.4th 845.[10]

In *Carolyn*, children were removed from their mother's custody in April 1994 and returned to her custody in November 1994. (*Carolyn, supra*, 41

---

[9] Strangely, the Legislature's amendment of section 361.5 eliminated references to "foster care" except with regard to "sibling groups." As is apparent from the excerpts quoted above in footnote 8, the amended statute now provides presumptive section 361.5 services to parents of individual dependent children for the period between disposition and section 366.21 reviews (six-month for children under three, and 12-month for children over three). Sibling groups still apparently begin their six-month presumed entitlement as of the date they enter "foster care."

[10] We note this is not a case in which a parent has successfully reunified with a child in one dependency action, only to subsequently reenter the dependency system through a separate petition. In such cases, section 361.5 provides for a new entitlement to child welfare services. (See *Rosa S. v. Superior Court* (2002) 100 Cal.App.4th 1181, 1188–1189 [122 Cal.Rptr.2d 866].) Here, dependents' cases remained open at all relevant times; it was a section 387 petition that triggered the detention of dependents from father, not a new section 300 petition.

Cal.App.4th at p. 162.) The county filed a section 387 supplemental petition in July 1995, at which time the children were removed from their mother's custody for a second time. (41 Cal.App.4th at p. 162.) Thus, at the time of the dispositional hearing following this second removal, the *Carolyn* mother had received eight months of "reunification services" (between Apr. and Nov. 1994) and 10 months of "family maintenance services" (following the return of the children to her custody in Nov. 1994). (*Id.* at p. 163.) The *Carolyn* mother advocated (under a prior but similar version of § 361.5) for a parent's entitlement to an additional 12 months (and potentially up to 18 months) of reunification services " '*whenever* a minor is removed from a parent's or guardian's custody . . . .' " (*Carolyn,* at p. 164.)

The *Carolyn* court affirmed the trial court's denial of additional section 361.5 reunification services to the mother. (*Carolyn, supra,* 41 Cal.App.4th at pp. 162–167.) The *Carolyn* court primarily relied on the following language in section 361.5 as enacted at the time: " 'Physical custody of the minor by the parents or guardians during the 18-month period shall not serve to interrupt the running of the period.' "[11] (*Carolyn,* at p. 165.) Thus, the court reasoned, section 361.5 "obviously limits the section's mandate for services to the point in time which begins when the court initially orders a child *removed from parental custody pursuant to section 361.*" (*Carolyn,* at p. 165, italics added.) The court further observed it considered reunification services and maintenance services to be "part of the continuum of child welfare services," with similar goals and methods. (*Id.* at pp. 165–166.) However, the court explicitly declined to address "the procedure a court should follow if a parent has received exclusively maintenance services, in other words, in the event a section 387 petition triggers the first time in a given case that a court removes a dependent child from parental custody." (*Id.* at p. 166, fn. 8.)

In *Joel, supra,* 70 Cal.App.4th 263, five children were detained from the mother in October 1996. The court authorized a "trial placement" in the mother's home before the dispositional hearing in January 1997, and this placement continued after the disposition.[12] (*Joel, supra,* 70 Cal.App.4th at p. 265.) The *Joel* mother received welfare services (counseling and drug testing) from October 1996 through early 1998. (*Id.* at pp. 265–266.) Pursuant to a supplemental petition, the *Joel* trial court removed all five children in February 1998 because the mother had ceased drug testing and had allowed her boyfriend (accused of molesting the children) into her home.

---

[11] Similarly, section 361.5, subdivision (a)(3), currently states: "Physical custody of the child by the parents or guardians during the applicable time period under paragraph (1), (2), or (3) shall not serve to interrupt the running of the period."

[12] Presumably, the children were detained for some period of time until the court had an opportunity to approve a "trial placement" with the mother. But the recitation of facts in *Joel, supra,* 70 Cal.App.4th 263, does not specify whether, and for how long, the children were physically removed from the mother's custody.

(*Id.* at p. 266.) The trial court subsequently denied the mother's request for reunification services, finding 18 months of services already had been provided and also finding the facts did not justify any further extension of services. (*Id.* at pp. 266–267.)

*Joel, supra,* 70 Cal.App.4th 263, reversed this outcome: "When a dependency is declared, the juvenile court must order child welfare services be provided to the parents whether or not the child remains in the parent's home (§§ 361.5, subd. (a), 362, subd. (b)) and must review the status of the case every six months (§§ 364, 366.21, 366.22). However, if the child remains in the parent's custody, at each six-month review, the court determines only whether the dependency should be terminated or whether further supervision is necessary. [Citations.] Unlike the situation in which the child is removed from the home and court-ordered services are statutorily limited to 18 months (§ 361.5, subd. (a)), nothing in the statutes or rules limits the time period for court supervision and services when the child remains in the home [citations]. If supervision is no longer required, the court simply terminates the dependency. Otherwise, the state may continue to provide supportive services and supervision to parents until the dependent minors reach their majority." (*Id.* at pp. 267–268, fn. omitted.) The *Joel* court concluded that "when the juvenile court removes a minor from parental custody for the first time [by a section 387 supplemental petition], section 361.5, subdivision (a), requires the court to order reunification services except in the circumstances specified in subdivision (b) of that section." (*Id.* at p. 268.)

In *N.M., supra,* 108 Cal.App.4th 845, an 18-month-old child was detained in January 2001 when both his parents were arrested for possession of crack cocaine and narcotics paraphernalia. (*Id.* at p. 848.) Following his detention, the child was immediately placed with his grandparents with parental visitation. Later that month at the dispositional hearing, the court placed the child with his mother under a family maintenance plan and provided reunification services to father. (*Ibid.*) Pursuant to a section 388 petition, in July 2001 the court modified its order to place the child with the father and mother, due to the father's successful completion of treatment programs. (*N.M.,* at pp. 848–849.) In February 2002, the court found true the allegations of a section 387 supplemental petition (a new incident of drug abuse by parents), removed the child from the parents' custody (for the second time), and ordered the initiation of reunification services. (*N.M.,* at p. 850.) In October, the trial court held what it characterized to be a six-month review and continued services for an additional six months. (*Id.* at p. 851.) The child appealed.

The *N.M.* court, following *Carolyn, supra,* 41 Cal.App.4th 159, reversed (the *N.M.* opinion does not mention *Joel, supra,* 70 Cal.App.4th 263).

According to *N.M.*, both parents had already received approximately 20 months of services by the time of the October 2002 hearing, and the court therefore could not extend services further absent a finding of "exceptional circumstances" (which were not present there). (*N.M., supra*, 108 Cal.App.4th at pp. 853–856.) The *N.M.* court acknowledged *Carolyn* declined to rule on a hypothetical case in which a child was never actually removed from a parent's custody until a subsequent section 387 petition. (*N.M.*, at p. 854.) The *N.M.* court explained that, in the case before it, father had lost custody for approximately six months, and mother had lost custody between the original detention and the dispositional hearing later in the month. (*Id.* at p. 854.) Thus, the court rejected the argument that the 18-month maximum period of section 361.5 services did not begin to run until the February 2002 removal of the child. (*N.M.*, at p. 854.)

In sum: *Carolyn* stands for the proposition that once the section 361.5 clock begins, it continues to run despite a placement of the child with a parent during the dependency. (*Carolyn, supra*, 41 Cal.App.4th at pp. 162–167; but see *Rosa S. v. Superior Court, supra*, 100 Cal.App.4th at pp. 1188–1189 [§ 361.5 clock is reset when original dependency is dismissed and new § 300 petition is filed].) *Joel* holds that if the child is never removed from the physical custody of the custodial parent pursuant to section 361, subdivision (c), and instead receives services pursuant to section 362, the section 361.5 clock does not start at all—at least until an amended petition results in a removal of custody. (*Joel, supra*, 70 Cal.App.4th at pp. 268–269; see also *Erika, supra*, 28 Cal.App.4th at p. 475 [suggesting § 361.5 is inapplicable to circumstance in which child is placed with noncustodial parent pursuant to § 361.2].) Finally, *N.M.* holds that the 18-month clock begins for both parents if the child is detained from their custody at the onset of the dependency action, regardless of whether the court grants one parent custody at the disposition under a family maintenance plan (pursuant to § 362 in *N.M.*). (*N.M., supra*, 108 Cal.App.4th at pp. 852–855.)

*Application of Section 361.5 to Dependents in This Action*

Having considered the cases discussed above, the trial court provided the following explanation for its ruling on the issue before us: "[T]he petition did come into the court system with a detention in April of 2006. At the disposition, . . . the court adopted the case plan and recommendation of the agency, which was to have the child returned to father. . . . [I]t was a family maintenance case plan to father, with an enhancement to mother. [¶] Mother at this time was not offered reunification services. It was not contemplated that she would be reunifying with the child. . . . The expectation of a time line for her to complete services, facing ultimate termination of parental

rights under an advisement, was not in place. And she was, therefore, not subject to the time line that is in place for services for children that are not in the home."

"Mother did some services along the way prior to the subsequent petition being filed, but those were because she was court ordered to do them under the threat of incarceration. So those were done, but those were not services that were ordered by this court. They were in connection with her criminal court case . . . . [¶] I think there were some things that she did with respect to this case under the enhancement, but they were minimal in that the bulk of her activity was as a result of her criminal orders that she was required to comply with. [¶] . . . [¶] The subsequent petition did result in a detention, as the first did, but it also resulted in a family reunification case plan. . . . [¶] And the court believes that now that we are in reunification, . . . the time line is not over. [T]here is time for mother to work on the case plan that she has now, her reunification case plan."

■ We agree with the trial court's conclusion. Although there are ambiguities in the relevant statutes and case law, we think a section 361.2 placement with a noncustodial parent should be treated in the same manner as a section 362 placement with a custodial parent. In either case, the time limits for services set forth in section 361.5 do not apply if dependents are not removed from the custody of both parents at the dispositional hearing. (*Joel, supra,* 70 Cal.App.4th at pp. 268–269; *Erika, supra,* 28 Cal.App.4th at p. 475.) ■ In this case, section 361.5 did not become relevant until the amended petition resulted in the removal of dependents from the custody of both parents in November 2007. Moreover, the mother in this case never received reunification services until after dependents were removed from father's custody. Had section 361.5, subdivision (a), applied at the May 2006 dispositional hearing, mother would have been entitled to reunification services absent findings made pursuant to section 361.5, subdivision (b). (See *Erika,* at p. 475.) The court did not engage in a section 361.5 analysis at the May 2006 dispositional hearing.

*Carolyn, supra,* 41 Cal.App.4th 159, is inapplicable. Because the time limits provided in section 361.5, subdivision (a) never began, father's custody of dependents cannot be considered an "interruption" of the running of the 18-month period. *N.M., supra,* 108 Cal.App.4th 845, can be distinguished on its facts: The *N.M.* father did receive reunification services, thereby, according to the analysis in the *N.M.* case, triggering the section 361.5 time limitations at the beginning of the dependency.[13] (See also *In re Jesse W.*

---

[13] Of course, the correctness of the result in *N.M.* depends on the conclusion that it is accurate to find section 361.5 applies in the first instance even if dependent children are placed with a parent at the dispositional hearing.

(2007) 157 Cal.App.4th 49, 59–60 [68 Cal.Rptr.3d 435] [applying §§ 361.5 & 366.21 to circumstance in which child was removed from custody of mother after she stabbed father; mother received reunification services for six months while child was in custody of father].)

To the extent our decision conflicts with the rationale of *N.M.*, we disagree with *N.M.*[14] Quoting *Carolyn, N.M.* frames the legal question by stating " 'reunification efforts should resume . . . if: the parent has received less than 12 months of child welfare services [citations]; the parent did not receive reasonable child welfare services [citations]; or the case has passed the 12-month mark but there is a substantial probability the child will be returned within 18 months of the date the child was originally removed from the parent's physical custody.' " (*N.M., supra*, 108 Cal.App.4th at p. 853.) This is an accurate statement of the law for dependent children who enter foster care, are returned to their parent(s), and then once again are detained pursuant to a section 387 petition. (See *Carolyn, supra*, 41 Cal.App.4th at pp. 162–167; Cal. Rules of Court, rule 5.565(f) ["If a dependent child was returned to the custody of a parent or guardian at the 12-month review or the 18-month review or at an interim review between 12 and 18 months and a 387 petition is sustained and the child removed once again, the court must set a hearing under section 366.26 unless the court finds there is a substantial probability of return within the next 6 months or, if more than 12 months had expired at the time of the prior return, within whatever time remains before the expiration of the maximum 18-month period."].)

■ As *Joel, supra*, 70 Cal.App.4th 263, and *Erika, supra*, 28 Cal.App.4th 470, explain, however, if minors remain in the custody of a parent, section 361.5 plays no role. The section 361.5, subdivision (a) "clock" does not start to run against such parents unless and until the children are removed from the physical custody of the parent(s) and the court determines whether the parent(s) is (are) entitled to reunification services pursuant to the lengthy analysis set forth in section 361.5.[15] Despite the existence of an actual (if brief) removal from the parent's "custody" (or "physical custody") between the initial detention and the dispositional hearing, section 361.5 is inapplicable in the absence of a disposition ordering a placement with someone other than a parent.

---

[14] We need not explicitly address the precise particular fact pattern in *N.M.*, wherein one parent did receive reunification services. The facts in this case differ, as neither father nor mother received reunification services following the initial jurisdictional and dispositional hearing in May 2006. Nevertheless, we recognize a straightforward application of the principles announced in *N.M.* could result in a different disposition of this appeal.

[15] The Legislature's amendments to section 361.5 conform with this interpretation. Effective January 1, 2009, section 361.5, subdivision (a), makes clear that the time limits provided therein apply only to reunification services.

This conclusion is buttressed by several additional features of the statute. First and foremost are references to "enter[ing] foster care" as a trigger for the beginning of the time limits provided by section 361.5, subdivision (a). The statute explains "a child shall be deemed to have entered foster care on the earlier of the date of the jurisdictional hearing held pursuant to Section 356 or the date that is 60 days after the date on which the child was initially removed from the physical custody of his or her parent or guardian." (§ 361.5, subd. (a)(3); see also *In re S.B.* (2005) 130 Cal.App.4th 1148, 1164 [30 Cal.Rptr.3d 726] [initial detention hearing placement is not a "foster care placement" under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.); "foster care placement" does not occur until jurisdictional/dispositional hearing].)

Section 361.5, therefore, provides the date of entry into "foster care" for purposes of its time limitations for services, but it does not explain whether a dependent child enters "foster care" in every dependency case. According to our Supreme Court, an appropriately "expansive definition of a foster parent [is] 'one who, although not legally related to the child by direct *parental* blood ties, nor decreed a parent in formal adoption proceedings, assumes the role of parent.' " (*In re Laura F.* (1983) 33 Cal.3d 826, 831, fn. 4 [191 Cal.Rptr. 464, 662 P.2d 922].) This does not describe dependents' father: he is related to dependents by direct parental ties. (See *Tara S. v. Superior Court* (1993) 13 Cal.App.4th 1834, 1837–1838 [17 Cal.Rptr.2d 315] [rejecting view that Interstate Compact on the Placement of Children (Fam. Code, § 7900 et seq.) applied to placement of child with out-of-state natural father because article 3 of the compact limits its application to "foster care and possible adoption—neither of which would involve natural parents"].) Based on generally applicable notions of what constitutes "foster care," dependents did not actually "enter" foster care until November 13, 2007, when they were removed from their father's custody and placed with their grandmother.

An additional indication section 361.5 does not apply to a circumstance in which a child is placed with a parent at disposition is the language describing the 18-month limitation in section 361.5, subdivision (a): "Notwithstanding paragraphs (1), (2), and (3), court-ordered services may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from physical custody of his or her parent . . . *if it can be shown*, at the hearing held pursuant to subdivision (f) of Section 366.21, that the permanent plan for the child is that he or she *will be returned and safely maintained in the home* within the extended time period." (Italics added.) Here, until the section 387 amended petition, dependents were in father's custody, the court did not provide reunification services to either parent, and the court could not conduct any hearings pursuant to section 366.21 to determine whether to "return" dependents to their parents' custody. Instead,

the court simply monitored dependents through the provision of family maintenance services to parents.

Finally, it should be observed that this result makes sense. Children who are placed with at least one of their parents from the beginning of the dependency are differently situated than those who immediately enter foster care. Such a child, in most cases, is not suffering from the same level of disruption and need for prompt permanency adjudication as he or she might otherwise experience in a foster care placement. Moreover, a custodial parent who has lost custody to a (previously) noncustodial parent following a dependency petition is not similarly situated to one who loses custody of the child to an alternative placement. This parent does not have the same section 361.5 right to attempt reunification during the dependency proceeding if the court decides to maintain custody with the previously noncustodial parent. Also, the parent who takes custody during the dependency is differently situated than if the child entered foster care immediately: this parent, who most likely did not directly create the conditions which led to the dependency, could be deprived of any opportunity to receive section 361.5 reunification services in a case with facts similar to this case.

## Review for Substantial Evidence

■ Because J.C. was under three in April 2006, and because the court did not return dependents to parents and found adequate services had been provided in June 2008, the parties agree the court was required to address whether there was a substantial probability dependents may be returned to a parent by the 12-month permanency hearing in October 2008. (See §§ 361.5, subd. (a)(2), (3), 366.21, subd. (e); *M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 174–183 [83 Cal.Rptr.3d 864]; *In re Christina A., supra*, 91 Cal.App.4th at p. 1165, fn. 2 ["initial removal" is the initial date child is removed from home by peace officer pursuant to § 305 or social worker pursuant to § 306].) "If, at the six-month review, the court finds there is a substantial probability the child may be returned to the parent, the court lacks discretion to schedule a section [366].26 hearing. The court must instead continue reunification services until the 12-month review, and make any necessary modifications to the service plan in the interests of facilitating reunification." (*M.V. v. Superior Court, supra*, 167 Cal.App.4th at p. 182.)

Despite evidence in the record detailing what SSA deemed "minimal efforts to reunify," substantial evidence in the record supports the court's affirmative answer to this inquiry. From November 2007 to May 2008, mother completed a parenting course and a child abuse program; had no positive drug tests (although she missed testing on several occasions); nearly completed her 52-week batterer's intervention program; and took advantage

of many of her unsupervised visit opportunities. Furthermore, SSA recommended continuation of services until the 12-month review. The court's order has support in the record; we are not permitted to reweigh the evidence. (See *In re Megan S.* (2002) 104 Cal.App.4th 247, 251 [127 Cal.Rptr.2d 876].)

## DISPOSITION

The postjudgment order is affirmed.

Bedsworth, Acting P. J., and Aronson, J., concurred.