Filed 1/21/15  In re Nathan P. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| In re the Matter of NATHAN P., et al., <br><br>                            Minors. <br> ————————————————— <br> B. L., <br><br>    Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY, <br><br>    Respondent; <br><br> SAN LUIS OBISPO DEPARTMENT OF SOCIAL SERVICES, <br><br>    Real Party in Interest. | 2d Civil No. B259315 <br> (Super. Ct. No. JV51513) <br> (San Luis Obispo County) |

B. L., the biological mother of Nathan P. (age 11), Tristan P. (age nine), Grayson P. (age eight), S. P. (age six),  Jayden P. (age four), and Ashton B. (age two)  seeks extraordinary writ relief from a September 26, 2014 order terminating reunification services and setting the matter for a permanent placement hearing.  (Cal. Rules of Court, rule 8.452; Welf. & Inst. Code, § 366.26.)[1]    Mother claims that the trial court abused its discretion in not returning the children or extending reunification services.  (§ 352; *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774.) We deny the writ petition.

_____

[1] All further statutory references are to the Welfare and Institutions Code.

*Factual and Procedural History*

Mother has a long history of domestic violence and substance/alcohol abuse that has undermined the safety and well being of her six children.[2] On March 18, 2013, San Luis Obispo County Department of Social Services (DSS) filed a petition for failure to protect (§ 300, subd. (b)) and serious emotional damage (§ 300, subd. (c)) based on Mother's on-going domestic violence with her boyfriend, Daniel B.

DSS reported that all the children have been exposed to domestic violence and engage in aggressive behaviors. Grayson (age eight) suffers from explosive outbursts and has been diagnosed with ADHD and PTSD. His outbursts at school include yelling, cursing, punching, flipping desks over, and striking teachers and classmates. Grayson's behavior was so violent that he was not allowed on the playground with other children. At an October 16, 2013 mental health evaluation, Grayson was placed on an involuntary psychiatric hold and received psychiatric treatment until October 22, 2013, when he was released to a specialized foster home that was caring for Tristan.

Tristan (age nine) suffers from PTSD, Anxiety Disorder, and Manic Depressive Disorder. He frequently runs away from school and has episodes of violence which require that he be sent home.

Jayden (age four) is intellectually delayed, has been diagnosed with cerebral palsy, and is physically aggressive and struggles with transitions. Both Jayden and Tristan have episodes of self-harm behavior and hit and bite themselves.

At the combined jurisdictional/disposition hearing, mother admitted that her boyfriend, Daniel B., beat her in front of the children and threatened to kill her and the children. On one occasion, Daniel B., while drunk and under the influence of cocaine, beat mother for three hours in front of Jayden. Mother reunited with Daniel B. after he was released from jail, only to be beaten again.

---

[2] Gray P. is the biological father of Nathan, Tristan, Grayson, Shaelynn, and Jayden. He has a history of substance abuse, was noncompliant with the plan, and displayed aggressive/inappropriate behavior with the social worker and service providers. Mother's boyfriend, Daniel B., is the biological father of Ashton and has a domestic violence criminal history.

The trial court removed the children and ordered reunification services. Mother was ordered to participate in Drug and Alcohol Services, attend a parenting class, undergo a mental health assessment, attend mental health/domestic violence counseling, and maintain appropriate visitation. Mother was warned that due to the tender age of Jayden and Ashton, that services could be terminated in six months if mother failed to make substantial progress on her case plan.

At the 6-month and 12-month review hearings, DSS reported that mother was not following through with services and unable to address the children's behavioral issues. Mother was disengaged at visits, appeared to be unconcerned about the children's special needs, and admitted that she relapsed twice and consumed alcohol while the children were asleep. DSS also reported that mother was also seeing batterer Daniel B.

In early 2014, the children were placed back in the home but conditions quickly deteriorated. On April 18, 2014, DSS filed a section 387 supplemental petition to remove the children after mother left Nathan and Tristan in Daniel B.'s care in violation of a no-contact order. The case worker was concerned about the children's behavior and mother's inability to provide for the children's safety. Mother was not following through with the children's medical treatment or responding to requests from school authorities to pick up the children.

After the children were removed a second time, the trial court set the matter for an 18-month review hearing and ordered mother to have no contact with Daniel B. Mother was warned that violation of the order would result "in the immediate termination of services."

When mother tried to stop Jayden's scheduled surgery for chronic ear pain, DSS filed a JV-180 petition to terminate services. The petition alleged that mother was living with Daniel B., that she lacked the skills to safely parent the children, and that the children were thriving in foster care.

At the 18-month review hearing, the trial court found that mother's domestic violence and substance abuse was an on-going problem. "One of the things that concerns me about the domestic violence issue is the continued aggression your children have shown

3

over time . . . . [T]hey are so young' . . . It has become clear to this court that these children learned their aggressive behavior in their own home . . . ." The court terminated services and set the matter for a section 366.26 hearing.

We review for abuse of discretion. (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1424.)

*Extended Services*

Reunification services may be extended beyond the 18-month limitation period where the trial court finds that reasonable services were not provided or if exceptional circumstances warrant an extension of services. (*In re Elizabeth R., supra,* 35 Cal.App.4th at p. 1787 (*Elizabeth R.*); *In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1209;.)

In *Elizabeth R.,* the mother was hospitalized for mental health issues during most of the reunification period. (*Id.*, at p. 1777.) The trial court was impressed with mother's progress but believed it had no choice but to terminate reunification services at the 18-month review hearing. (*Id.*, at p. 1783.) The Court of Appeal reversed, holding that section 352 provides an "emergency escape valve in those rare instances in which the juvenile court determines the best interests of the child would be served by a continuance of the 18-month review hearing." (*Id.*, at p. 1798-1799.)

Unlike *Elizabeth R.*, there are no special circumstances to extend services. Mother's relationships with abusive men and unresolved alcohol/substance abuse is a disaster waiting to happen. Even after the children were removed the second time in April 2014, mother delayed treatment at Drug and Alcohol Services until July 17, 2014. Mother claimed that she was making great progress but her drug counselor testified that mother is in the first phase of treatment and will require seven more months of treatment.[3]

"[W]hile the dependency scheme generally requires that parents be offered reunification services, the Legislature has limited those services to 'a maximum time period

---

[3] Mother's road to recovery has been less than stellar. In 2013 mother had 14 drug tests, testing positive for marijuana three times and positive for alcohol two times. Mother submitted five "diluted tests" and failed to attend group counseling. In 2014, mother missed three scheduled drug tests.

4

not to exceed 12 months,' which under certain circumstances may be extended to 18 months. (§ 361.5, subd. (a).)" (*In re Zacharia D.* (1993) 6 Cal.4th 435, 446.) Although extenuating circumstances may justify extending services beyond the 18-month cut-off period, this is not an *Elizabeth R.* case. (*Elizabeth R., supra,* 35 Cal.App.4th at p. 1799; *Cresse S. v. Superior Court* (1996) 50 Cal.App.4th 947, 954.) Mother knowingly put her children in harm's way and lied to DSS about her on-going relationship with Daniel B. Children are not required to spend their lives in the limbo of foster care until a parent grows up. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 308.)

*Sibling Relationship*

Nathan (age 11) and S. (age 6) were placed together but the other children (Tristan, Grayson, Jayden, and Ashton) live in different foster homes due to their special needs. Each child is thriving in his or her placement.

Mother asserts that additional services are required to maintain the sibling bond and ensure the children are raised in the same home. The trial court found that the placements were necessary and appropriate. Although mother believes that services should be continued to preserve the sibling bond, those matters will be determined at the 366.26 permanent planning hearing. (§ 366.22, subd. (a); Cal. Juvenile Dependency Practice (Cont.Ed.Bar 2013) § 6.25, p. 494.)

The petition for extraordinary relief is denied.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.

5

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

Theresa G. Klein, for Petitioner.

Rita L. Neal, County Counsel, Leslie H. Kraut, Deptuy County Counsel, for Respondent.