Filed 3/14/16  D.H. v. Superior Court CA2/6
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| D.H.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,<br><br>    Respondent;<br><br>SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Real Party in Interest. | 2d Civil No. B268259<br>(Super. Ct. No. 14JV-00274)<br>(San Luis Obispo County) |

       D.H. (Mother) has filed an extraordinary writ petition (Cal. Rules of Court, rules 8.452, 8.456) to set aside the juvenile court orders that (1) terminated her family reunification services with her daughter, L.D., a minor child coming under the juvenile court law (Welf. & Inst. Code, § 300, subds. (b) & (g)),[1] and (2) set a section 366.26 hearing.  We conclude, among other things, that Mother has not shown the juvenile court erred by terminating reunification services.  The petition is denied.

---

[1] All statutory references are to the Welfare and Institutions Code unless stated otherwise.

## FACTS

In August 2014, Mother was arrested for inflicting corporal injury to a cohabitant (Pen. Code, § 273.5, subd. (a)) after she assaulted her boyfriend with a beer bottle while she was intoxicated. She was the mother of five-year-old L.D., eight-year-old S.D., and ten-year-old A.D. "The children witnessed the onset of the assault." In July 2014, Mother drove a vehicle "into her neighbor's home." Mother was "unconscious and smelled of alcohol when law enforcement responded to the scene."

The San Luis Obispo County Department of Social Services (DSS) filed a juvenile dependency petition (§ 300, subds. (b) & (g)) alleging that Mother failed to protect L.D. and because of her incarceration she could not care for the child. DSS said Mother "had been unresponsive due to her consumption of alcohol while the children were in her care." "The children report[ed] that on two occasions they have witnessed strangers coming to their door, giving [Mother] money," and they saw Mother "providing them with pills out of a prescription bottle." DSS placed L.D. with her maternal aunt.

At an August 20, 2014, hearing, the juvenile court ruled the child, L.D., had to be detained and Mother had "some mental health issues."

The juvenile court conducted a combined jurisdictional and dispositional hearing. DSS claimed the domestic violence in Mother's household had a negative impact on the five-year-old child. A social worker testified that L.D. told DSS that "she does not feel safe with [Mother] because of the fighting between [Mother] and [Mother's] boyfriend." The court found the child was a person described in section 300 and it sustained the petition. It removed the child from Mother's custody and set six-month and 12-month review hearings. It ordered DSS to provide Mother with a case plan and reunification services. The case plan required, among other things, that Mother not use alcohol and/or illicit substances, she undergo drug testing, participate in treatment programs, and mental health counseling.

DSS also determined that Mother's two older children should also be dependents of the juvenile court. The social workers decided that Mother could have visitation, but the visits with the children had to be supervised.

In the six-month "status review report," DSS recommended that L.D. "continue to be a dependent of the Juvenile Court in out-of-home care." It said Mother had not complied with her case plan and she was not "participating in mental health services." DSS noted that Mother did not appear for a "Probation Violation Hearing," and the juvenile court revoked her probation and issued a warrant for her arrest.

At a September 18, 2015, hearing, involving Mother's request for unsupervised visits with her children, Mother's counsel made an offer of proof in lieu of Mother's testimony. The parties did not object. Counsel stated, among other things, that Mother would testify that she suffered an injury to her back when she was 14 years old. Doctors prescribed "opiate painkillers" for her back spasms. Mother acknowledges "testing dirty for benzos and [painkillers] over the history of this case." But Mother claimed she took those "medications as prescribed out of medical necessity." "In the past few weeks," Mother "appeared for an assessment at [the] Santa Maria Drug and Alcohol" program for out-patient treatment. She completed 38 of the 52 "batterer's program hours" as part of her case plan and she began counseling "with Jane Hill." The court denied the request for unsupervised visits. It noted that Mother had a "recent" positive drug test.

For the 12-month review hearing, DSS filed a report recommending termination of Mother's reunification services. It said Mother did not take steps to comply with her case plan until late August 2015, which was "too little too late."

In addition, for the 12-month review hearing, a clinical psychologist, Carolyn Murphy, Ph.D., filed a report with the juvenile court after interviewing Mother. Murphy said Mother "is now willing to participate in any treatment she is being asked to do . . . ." She also said Mother "does not believe that her past substance use in any way denoted a problem . . . ." Mother "may be lacking in deeper insight given that she is still

3

in the early stages of treatment." "While this examiner does not have an opinion as to whether or not she should have services extended an additional six months, there is nothing at present to suggest that she could not successfully complete the requirements in a six-month timeframe were she to choose to do so."

A drug and alcohol counselor filed a report dated October 7, 2015, indicating that Mother enrolled at "Recovery Point" on September 11, 2015. Between September 11, and October 7, 2015, Mother "has not missed any groups or test times" and has tested "negative for all substances."

The parties accepted an offer of proof from Mother's counsel that Mother had been seeing Dr. Weaver, a primary care physician, since August 2015. Weaver would testify, among other things, that Mother "always appeared reasonable in her office, and did not have any appearance of drug-seeking." She "has treated several chronic pain patients who were able to use prescribed [painkillers] and still function well, including appropriate parenting." Weaver prescribed fiorinal on October 2, 2015, for Mother's cluster headaches. She also prescribed gabapentin "for back issues with great success."

A court-appointed special advocate (CASA) filed a report with the court. She said Mother had a "lack of insight into her issues (substance abuse and mental health)." She noted that L.D. had "PTSD" and was receiving mental health treatment. The special advocate agreed with the DSS determination that reunification services should be terminated.

Mother testified that she had taken medications to manage pain including dilantin, fiorinal, norco, vicodin, tramadol, gabapentin, flexeril, and medical marijuana. The last time she drank alcohol was on December 30, 2014. Her use of alcohol and prescription medication did not impair her "ability to parent." Her children were "dependents" of the court because of "a domestic violence situation" and no alcohol was "involved in that incident." On cross-examination, she testified she was "addicted" to "an opiate" called "norco" about "a year ago." She said it was pain medication. She did not believe that she needed "to attend drug treatment today."

4

Mother testified that she did not believe that L.D. suffers from PTSD or had "any special needs." She had not talked to L.D.'s therapist and did not know the therapist's name.

Juliana Malaveci, a DSS social worker, testified Mother was "not given unsupervised visits [with the children] because of a lack of progress with regards to her case plan." Mother only began "the services that were depicted in the case plan" in August 2015. Malaveci said L.D. could not "be safely returned" to Mother within an 18-month period. She is in "denial" about her substance abuse problem. Finishing her current three-month treatment program would not change the result because of Mother's "idea that she does not have a substance abuse problem."

Malaveci testified that before Mother could have unsupervised visits with the children she would need "continued substance abuse treatment, continued negative tests for all substances, [and] better impulse control with regards to sharing inappropriate information in front of the [children] . . . ." She said, "[T]he girls, themselves, did not feel safe to be alone in their mother's presence." There have "been numerous reports of neglect of the children during the time from the year 2011 on." Mother admitted that she was taking "various narcotic painkillers." DSS had safety concerns for the children because of Mother's "substance abuse, untreated mental health issues," and "domestic violence."

The juvenile court terminated reunification services. It said Mother had not made "substantive" progress for continued services, and there was no "substantial probability" that L.D. could be returned to Mother within 18 months. The court told Mother that "you have yet to internalize the reasons why these children were taken from your care." It said Mother did not understand how her substance abuse and domestic violence "permanently affects children."

DISCUSSION

*Terminating Reunification Services*

Mother contends there is insufficient evidence to support the juvenile court's findings and ruling that reunification services be terminated. We disagree.

In reviewing a challenge to the sufficiency of the evidence, we must draw all reasonable inferences in favor of the juvenile court's findings. (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1400-1401.) We do not decide the credibility of the witnesses or resolve conflicts in the evidence. Those are matters exclusively within the province of the trier of fact. "If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.)

"When a dependent child is removed from parental custody, the court generally orders services for the family to facilitate its reunification." (*In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 876.) "Reunification services for a parent of a dependent child over the age of three are ordinarily limited to 12 months, but may be extended to the 18-month date." (*Ibid.*) "A parent, however, has no entitlement 'to a prescribed minimum period of services.'" (*Ibid.*) "Instead, the court has discretion to determine whether continued services are in the best interests of the minor, or whether services should be terminated at some point before the applicable statutory period has expired." (*Ibid.*)

"In order to find a substantial probability that the child will be returned within the 18-month period, the court must find all of the following: [¶] a. The parent or legal guardian has consistently and regularly contacted and visited the child; [¶] b. The parent or legal guardian *has made significant progress in resolving the problems that led to the removal of the child*; and [¶] c. The parent or legal guardian has demonstrated the capacity and ability to complete the objectives of the treatment plan and to provide for *the child's safety, protection, physical and emotional health, and special needs*." (Cal. Rules of Court, rule 5.715 (b)(4)(A)(i), italics added.)

6

"[S]ubstantial compliance with [a] case plan must not be confused with the requirement a parent make substantial progress *towards reunification . . . .*" (*Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1029.) "The one finding does not automatically compel the other." (*Ibid.*)

Mother relies on her own testimony and the other evidence she presented. But her credibility was a matter exclusively for the trier of fact. She suggests the juvenile court did not give sufficient weight to her evidence. But we do not weigh the evidence. There were conflicts in the evidence. But resolution of those conflicts was a matter exclusively for the juvenile court as trier of fact. Moreover, the issue on appeal is not whether some evidence supports Mother's position, it is only whether substantial evidence supports the court's findings. (*In re Misako R.*, *supra*, 2 Cal.App.4th at p. 545.)

Mother claims there was no substantial evidence to support the juvenile court's finding that "there was not a substantial probability that [the child] could be returned to [Mother's] care by the 18 month hearing date."

DSS disagrees. It contends Malaveci's testimony supports that finding. Malaveci testified L.D. could not "be safely returned" to Mother within an 18-month period. DSS also claims: (1) there is evidence that Mother had a long history of noncompliance with her case plan; (2) she did not make substantial progress toward reunification; (3) she lacked insight about her substance abuse problem and the reasons why her children were removed from her care; and (4) the court could reasonably find it was in L.D.'s best interests that reunification services be terminated. We agree.

In an April 2015 status review report, DSS said Mother "has been inconsistent with her case plan compliance since the last hearing regarding her mental health, parenting education, substance abuse treatment, and drug testing." Mother was scheduled to see a county mental health therapist. But the therapist "discharged [Mother] due to [Mother] *missing several scheduled appointments*." (Italics added.) DSS said Mother "stated she does not have a substance abuse problem and she is *not agreeable to participating in treatment*." (Italics added.) DSS also noted that she "continues to be *in*

7

*denial about substance abuse and how it impacts her ability to safely parent her children.*" (Italics added.) "At the writing of this report [Mother] is *not participating in mental health services.*" (Italics added.)

In a 12-month status review report, DSS recommended that Mother's family reunification services be terminated. DSS noted that on May 5, 2015, the social worker notified Mother that she was *not in compliance with her case plan.* DSS determined that L.D. "would not be safe if she were returned to [Mother's] care." Mother "has not demonstrated *that she can be a safe, long-term, primary caretaker of her children.*" (Italics added.) DSS said that Mother "continues to use and/or abuse prescription pain medications that may be impairing her functioning."

Mother claimed she tested positive for drugs because she was taking them as part of a proper pain management protocol and DSS erred in concluding otherwise. But Murphy felt the claim about a pain management protocol was inconsistent with her actual use of drugs. She said, "DSS is correct in being concerned that the two incidents in the summer of 2014 [followed] by continued positive tests for alcohol in late 2014 does suggest some over-reliance upon substance use that cannot be fully accounted for by her pain management protocol."

In a subsequent DSS "Interim Review Report," it said Mother "has not made sufficient behavioral change over time with regards to establishing and maintaining sobriety, which is *one of the risk factors that brought her children into care.*" (Italics added.) DSS said Mother "has not received consistent mental health treatment since December of 2014 and has failed to recognize how historically her mental health state and dependence on prescription drugs and marijuana have and/or may have *impacted her ability to safely parent her children.*" (Italics added.)

DSS said Mother had requested "additional" child visitation for July 13, and September 12, 2015, visit dates. But she missed the first visit and cancelled the second one. Mother also had made "inappropriate comments" during visits with the children. She continued to discuss "her medical health, case-related activities, and/or

8

father's girlfriend" despite "being asked several times not to bring such inappropriate topics into conversation." DSS said it was necessary for the weekly child visits to continue to be supervised because of Mother's failure to make a "sufficient behavioral change." The children "perceive [Mother] as threatening."

The special advocate was "in agreement with the stated recommendation that [Mother's] Family Reunification Services terminate as to her daughter [L.D.] and that a [section] 366.26 hearing be scheduled to identify a permanent plan for the minor." She said the child has PTSD and is receiving mental health therapy. L.D. "likes everything about her new foster home." She is "doing exceptionally well in her new placement." The special advocate said that during a June 2015 visit with the children, Mother "was on her phone during most of the visit." The children were misbehaving. Another adult "redirected the children's behavior because [Mother] did not." The special advocate concluded her report by stating, "[M]y ultimate concern is [Mother's] *lack of insight* into her issues (substance abuse and mental health) especially as we are now at the 12 month hearing." (Italics added.) In her report, Murphy also noted that Mother "[did] not believe her past substance use in any way denoted a problem" and Mother may be "lacking in deeper insight."

Mother contends "her providers uniformly reported active participation and meaningful progress" on her part. But the weight and credibility of that evidence were matters for the trial court.

Moreover, Mother's efforts at compliance took place at a very late stage of the reunification services timeframe. Parents should not expect additional reunification services where they do not comply with their case plan until the "eve" of the review hearing and then claim their current "flurry of activity" suffices. (*Cresse S. v. Superior Court* (1996) 50 Cal.App.4th 947, 954-955.)

Malaveci said Mother did not seek "available resources to address and mitigate the safety factors that brought her children into foster care *until late August 2015,*" which is "too little too late." Mother's very recent efforts took place a year after

9

L.D. was removed from her care. Mother began treatment with Dr. Weaver in August of 2015. She enrolled at Recovery Point a month later. Mother points to therapist Jane Hill's report, which indicated Mother "has been consistent in her attendance and has participated actively in her therapy." But Hill said this attendance and participation occurred "*since September 3, [2015]*." Mother introduced a report from a drug and alcohol counselor who said Mother "has not missed any groups or test times" and has tested "negative for all substances." But that report only covered the very short period between September 11, and October 7, 2015. Murphy did not "have an opinion as to whether or not [Mother] should have [reunification] services extended"; she said Mother was only in "the early stages of treatment."

The juvenile court could reasonably infer that reports by Mother's "providers" should be given reduced weight because they had very little time to evaluate her progress and her ability to make a long term commitment for rehabilitation. It could find DSS and Malaveci were in a better position to evaluate her prospects for success because they had reviewed her conduct over a much longer period. Malaveci testified that Mother's neglect of her children was a long term problem which began in 2011. The DSS reports and Malaveci's testimony constitute substantial evidence to support the juvenile court's findings. Mother has not shown error.

DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

10

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____


Meredeth E. Ruston, for Petitioner.

No appearance for Respondent.

Rita L. Neal, County Counsel, and Leslie H. Kraut, Deputy County Counsel, for Real Party in Interest.